EDWARD L. HAYNES *v.* STATE OF MARYLAND

[No. 191, September Term, 1973.]

*Decided November 27, 1973.*

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

430

· *John W. Sause, Jr., District Public Defender*, for appellant.

*James I. Keane, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *William S. Horn, State's Attorney for Talbot County*, on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

This appeal concerns the penalty stage of the trial of EDWARD LOUIS HAYNES on a criminal charge in the Circuit Court for Talbot County. Haynes does not question the propriety of the guilt stage of the proceedings. When the case came on for trial on 14 March 1973, he judicially confessed to assaulting and beating Harvey E. Smith.[1] The trial court, satisfied after inquiry that the plea was constitutionally voluntary, accepted it and rendered a verdict of guilty. On 19 April, after a presentence investigation report had been presented to the court, a sentence of 3 years was imposed. This appeal is predicated upon the report. It is contended that "the trial court could not base its sentence upon a report which [Haynes] had not seen, was not allowed to refute or discredit, and was based in large part upon rumor and hearsay."

I

Prior to 1 July 1972 the disposition of a report of presentence investigation was governed by Maryland Rule 761. After authorizing the court in § c to "order such person or organization as it may direct to make a presentence investigation and report to the court before the imposition of sentence or granting of probation," § d prescribes: "The report, except the recommendation, shall be subject to inspection by counsel unless the court directs otherwise."

---

1. The indictment in Criminal No. 1766 charged the assault and battery of Smith on 23 February 1973 by the 1st count and the simple assault of Smith by the 2nd count. Haynes tendered a general plea of guilty. The verdict of the court was guilty under the 1st count. The State then confessed not guilty in Criminal 1754, a case "involving Eugene Hurley."

The Division of Parole and Probation is a part of the Department of Public Safety and Correctional Services. Code, Art. 41, § 115. Section 124 (b) of Art. 41 prescribed: "The parole agents of the Department shall provide the judges of said courts [the circuit court of any county, the Criminal Court of Baltimore, and any court of limited criminal jurisdiction] with presentence reports or other investigations in all cases which may include commitment for two or more years, when requested by any judge." The General Assembly, however, by chapter 532, Acts 1972, repealed § 124 (b) and re-enacted it with amendments, effective 1 July 1972. The new Act changed former § 124 (b) and the effect of Rule 761 d in significant manner. The legislative intent can best be seen from the amendments to the former law and the changes in the bill as it proceeded through the Legislature. We set it out as it appears in *Laws of Maryland*, 1972, volume II, p. 1493.[2]

"124.

(b) The parole agents of the Department shall provide the judges of said courts with presentence reports or other investigations in all cases [which may include commitment for two or more years,] when requested by any judge. *The presentence reports* ~~will~~ SHALL *be made available*, UPON REQUEST, *to the* ~~defendant~~ DEFENDANT'S ~~or~~ ~~his~~ *attorney* ~~or~~ AND *the State's Attorney's Office. However* ~~the~~ *presentence reports* ~~are~~ SHALL BE *confidential and not available for public inspection except upon court order or for use by any correctional institution.* Such agents shall also perform such other probationary services as the said judges may from time to time request."[3]

---

**2.** "*Italics indicate new matter added to existing law.*
CAPITALS indicate amendments to bill.
[Brackets] indicate matter stricken from existing law.
~~Strike out~~ indicates matter stricken out of bill."
**3.** Chapter 456, Acts 1973, effective 1 July 1973, changed "parole agents of the Department" to "parole and probation agents of the Division."

Thus, as of 1 July 1972, § 124 (b) of Art. 41 provided, with regard to reports of presentence investigations made by parole agents:

"The presentence reports shall be made available, upon request, to the defendant's attorney and the State's Attorney's office. However presentence reports·shall be confidential and not available for public inspection except upon court order or for use by any correctional institution."

The history of the bill from proposal to approval, makes clear that the Legislature with respect to presentence reports provided by the Division of Parole and Probation, eliminated the discretion of the trial court regarding their availability, except as to public inspection.[4] In this respect the statute pre-empts Rule 761 d. Although such a report shall be confidential and not available for "public inspection" except upon court order or for use by a correctional institution, the defendant's attorney and the State's Attorney's office, upon request, are entitled to it as of right. The recommendation contained in the report is no longer excepted, and it also shall be available to counsel for the defense and the prosecution. It is equally clear, however, that the Legislature intended that the report not be available to the defendant as of right at his request; such a provision was in the bill as originally written but was subsequently deleted. Nevertheless, we do not construe the statute as requiring that a defendant be always kept in ignorance with respect to the information obtained by a presentence investigation. "It is surely true", we said in *Towers v. Director,* 16 Md. App. 678, 680-681, "that a trial judge in this State, as in the federal system, 'generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may

---

4. The title to the bill originally read that it was an Act "limiting the availability" of the reports. As passed, "providing for" was substituted for "limiting."

consider, or the source from which it may come.' *United States v. Tucker, supra,* at 446, and cases there cited; *Bryson v. State,* 7 Md. App. 353, 355; *Washington v. State,* 2 Md. App. 633, 634; *Gee v. State,* 2 Md. App. 61, 68. See Maryland Rule 761." "In such cases, however, any information which might influence his judgment, which has not been received from the defendant himself or has not been given in his presence, should be called to his attention, or to the attention of his counsel, without necessarily disclosing the sources of such information, so that he may be afforded an opportunity to refute or discredit it." *Driver v. State,* 201 Md. 25, 32.[5] Of course, if defense counsel exercises the right to have the presentence investigation report made available to him, he will have knowledge of the sources of information as set out therein, but sound discretion may dictate that he not disclose those sources to the defendant even though he discusses with the defendant the information itself. The short of it is that we see nothing in the statute or the Rule which precludes a defendant's attorney from discussing with the defendant the information contained in a presentence investigation report to the extent necessary to afford a fair opportunity to refute or discredit that information. See *Turner v. State,* 5 Md. App. 584; *Jordan v. State,* 5 Md. App. 520.

---

**5.** *Costello v. State,* 237 Md. 464, 471, and *Scott v. State,* 238 Md. 265, 275, seem to except presentence reports from the requirement that information which might influence the court's judgment, which has not been received from the defendant himself or has not been given in his presence, be made known to the defendant. The Court said in *Scott,* at 275:

"In the determination of a proper sentence a judge may utilize information obtained outside the courtroom, information furnished by those not subject to cross-examination and sometimes hearsay (provided that information not received from or in the presence of the defendant should be called to his attention so that he has the opportunity to refute, discredit or explain it — unless under Md. Rule 761 d the court directs otherwise as to a pre-sentence report). See *Costello v. State,* 237 Md. 464 * * *."

If there was an exception, it is no longer viable, for the reason that it was bottomed on the discretion bestowed on the court by Rule 761 d. As the court no longer has discretion to deny counsel access to the report, there is no valid basis for such exception.

## II

In the instant case the record shows that the report of the presentence investigation of Haynes, made by the Division of Parole and Probation, was available to Haynes's attorney. The report was sent to the trial judge with a covering letter dated 11 April 1973 reading, in part, as follows:

> "Per the instructions of the Court, copies are also being forwarded to the State's Attorney and Defense Attorney, Harry E. Sadoff, Esquire, with a copy of this letter as a reminder that Court policy requires that the contents of this presentence investigation not be divulged to the defendant or anyone else and with the understanding that the copy of the investigation will be returned to this Division after disposition of the case."

If defense counsel was precluded by "court policy" from divulging to Haynes the contents of the report to the extent necessary to afford Haynes a fair opportunity to discredit, refute or explain information therein contained which might influence the trial court in its judgment in sentencing, such "court policy" was wrong, as we have indicated.[6]

As far as we can ascertain from the record, defense counsel abided by the caution in the letter sending him a

---

6. Haynes declares in his brief:

"It is difficult to see, in the light of this 'Court policy' just what the function of defense counsel was to be. In addition to any sanctions which the Circuit Court might have imposed for violation of this policy, the report itself used the *in terrorum* method to discourage any attempt to advise Appellant of what was transpiring. In its 'Introduction', the report says that:

'Edward Haynes when threatened or when he rationalizes that someone has done him dirty, will use violent and aggressive action against that person. In view of his vindictiveness, the investigator would suggest to the readers to exercise good judgment [sic] in the release of information.'

The remaining ten pages of this report carry out this theme and end with the flat conclusion:

'The end result of all of these behavioral traits is that we have a lazy, unreliable, and irresponsible person of which any immediate hope of rehabilitation is but wishful thinking.' "

copy of the report of the presentence investigation. When he addressed the court he said: "I don't want to stand here and repeat everything in this report because your Honor has had a chance to look at it, as well as myself and Mr. Horne [State's Attorney]." Nothing in the remarks he made to the court lead us to believe that he discussed the information with Haynes. He sought a suspension of the execution of sentence and probation on conditions. The prosecutor responded at length, arguing against suspension and probation. He discussed the circumstances surrounding the offense of which Haynes stood convicted and pointed out Haynes's prior criminal record as listed in the report. He referred to the information in the report in detail. He opined: "May it please the Court, we are forced to say there's not one single sentence in this presentence investigation which would lead us to concur with Mr. Sadoff [defense counsel] that this defendant is a fit candidate for probation. Indeed everything in the presentence investigation indicates quite the contrary."

The court offered Haynes the right of allocution, Rule 761 a, and he responded, giving his version of the encounter with Smith. The prosecutor had referred to that part of the report which characterized Haynes as a "street person," and the leader of a group composed of individuals with bad reputations and criminal records. Haynes, in his remarks to the court, denied that he had ever "had trouble on the street. * * * I am not a street guy. I have been on the street due to the minor problem, and when I came out the last time I wasn't on the street much. I was there but wasn't there too much and to use drugs there is no where else to go, and as far as Sug Gibson [who the report said was one of the street group], Sug Gibson just recently tried to rob my mother so why should I try to hang around with him. I was hanging around with those type dudes when I first came home from Viet Nam."

In imposing sentence the court said that the report was "one of the best presentence reports I have had occasion to read, I have ever had occasion to read. It is in great detail and it covers everything that I could possibly be interested

in concerning the history of your life. And I must say it is one of the most critical presentence reports I have ever seen. I find nowhere in this report anything that would persuade me to be lenient." The court reviewed in detail the information in the report. The court said: "You have been given all sorts of chances and every time you are given a chance you flubbed it. You were put on work release and you were unable to keep the rules." Haynes replied, "That's not true. That's not true." Upon the imposition of a sentence of 3 years, the State filed a petition for the evaluation of Haynes as a possible defective delinquent. The court then returned to the presentence report. The transcript of the proceedings reads:

> "The Court: Now Haynes, there are a couple of things in this presentence report that stuck out clearly in my mind. I meant to mention them to you before sentencing. One was that you apparently had not been drinking when you went to the hotel.
>
> A. I had been drinking.
>
> The Court: According to this report there was no alcohol detectable upon you.
>
> A. This pre-trial investigation, I don't see like my side, the truth has never gotten out in this thing yet. They said I hit him three times, I mean twice. I never hit that man but once. It's all against me. There's a lot of things that didn't come up.
>
> The Court: You do admit you played possum when you got to the jail here and made out you were paralyzed?
>
> A. I didn't make out I was paralyzed. I fell.
>
> The Court: And you were carried to this hospital and carried to Baltimore, and the doctor said, 'Get up off the table and stop acting'.
>
> A. He didn't say I wasn't hurt. The Easton Memorial said they felt I should go to Baltimore. Well, they must be a bunch of dummies.
>
> The Court: They don't have a neurologist out here.

A. The neurologist here in Easton did the same thing.

The Court: They don't have any neurologist so if there is any possible suspicion of brain damage of the central nervous system they send you to Baltimore. Now here's another thing in the report too I felt very strongly about, your activities and you being a street person who spends many hours around West and Port Streets. The Court is well aware of the criminal records of those you associate with and you are described as the leader of the group. You are described as taking nothing from anyone. 'He is able to back up his threats', and it is said that 'Mr. Haynes is a very real influence on many of the younger people of this town. They look to him as some sort of idol or god'. Now with a record like that I think you can feel you got off easy. I could have given you twenty years.

A. Your Honor, he must have got this from a fairy tale book because this ain't true.

The Court: Well, it was done by a man who I have a great deal of respect for, and who has had a great deal of experience in investigations, and who I don't believe would put anything down on paper that he didn't honestly believe. You are the one to blame for it because you have made the reputation in the community and nobody has made it for you."

Despite the heavy reliance of the sentencing judge on the presentence report, we think that the information therein which influenced the judge was called to Haynes's attention so that he had reasonable opportunity to refute, discredit or explain it, personally or through his counsel. No request was made for a continuance by the defense to provide further opportunity to check the information. Haynes, at one point, suggested that his estranged wife "testify like trying to tell the story as it happened at the Tidewater Inn and try to help straighten this out." The court referred the request to defense counsel, who, after apparently conferring with

Haynes, observed: "He wasn't there to start trouble, and that's what she would say so there is no sense in her taking the stand to tell you that. * * * He has brought it out and I think you understand the circumstances, your Honor."

With respect to Haynes's complaint that the report was based "in large part upon rumor and hearsay," the Court of Appeals said in *Scott v. State, supra,* at 275: "In the determination of a proper sentence a judge may utilize information obtained outside the courtroom, information furnished by those not subject to cross-examination and sometimes hearsay." See *Costello v. State, supra,* at 470-471; *Driver v. State, supra,* at 32. We said flatly in *Sutton v. State,* 8 Md. App. 285, 298, that "* * * a trial judge may rely on hearsay evidence in determining sentence." In *Baker v. State,* 3 Md. App. 251, after noting the wide discretion enjoyed by the trial judge in determining the sentence to be imposed, we said, at 257:

> "In other words, to aid the sentencing judge in exercising this discretion intelligently, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the sentence that should be imposed, so that he may consider information obtained outside the courtroom and from persons whom the defendant has not been permitted to confront or cross-examine."

Although the sentencing court should not "give consideration to anything based only upon rumor," *Baker,* at 258, we cannot say, on the report as a whole, that information therein was "rumor" as distinguished from "reputation", or "hearsay" or "habits" and "mental and moral propensities."

In the circumstances, we find it was not improper for the court below to rely on the presentence report in imposing sentence. And on our independent constitutional appraisal of

the entire record, we hold that Haynes was not denied due process of law or any other "basic constitutional right" as he claimed.

*Judgment affirmed.*