607 A.2d 565

**The BALTIMORE SUN, et al.,**

v.

**John Frederick THANOS, et al.**

**No. 4, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

June 1, 1992.

Mary R. Craig, argued (Doyle & Craig, P.A., on the brief), Baltimore, for appellants.

Diane Krejsa, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee, State of Md.

George E. Burns, Jr., Asst. Public Defender, argued (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellee, Thanos.

Argued before ALPERT, DAVIS and MOTZ, JJ.

MOTZ, Judge.

The question presented by this case is whether a newspaper is entitled to access to a presentence investigation report which was admitted into evidence, under seal, in the penalty phase of a capital murder trial. There is, we hold, a First Amendment right of access to *this* report that prevents a trial court from denying access to it, absent a determination that the compelling interests served by maintaining the confidentiality of the report outweigh this right

of access. Since no such determination was made here, we must remand this case to the Circuit Court for Garrett County so that it may evaluate the newspaper's entitlement to access in light of the considerations enunciated herein.

(i)

A presentence investigation report ("presentence report") is one tool used by a judge or jury to assist in determining the appropriate sentence of a person convicted of a crime. Article 41, § 4–609 of the Maryland Annotated Code (1957, 1990 Repl.Vol., 1992 Supp.)[1] sets forth the conditions and procedures by which presentence reports are used in Maryland. In most cases a presentence report is simply filed with, and considered by, a trial court in its discretion. In capital cases, however, a presentence investigation is required to be made, the report must be considered by the sentencing body and can be entered into evidence. § 4–609(d); *Nelson v. State,* 315 Md. 62, 67, 553 A.2d 667 (1989). A presentence report often involves "a broad-ranging inquiry into a defendant's private life, not limited by traditional rules of evidence." *United States v. Corbitt,* 879 F.2d 224, 230 (7th Cir.1989). These reports generally include information concerning the convicted person's reputation, past offenses, financial condition, mental and physical health, habits, social background and family history, among other things. *Id.; see also Haynes v. State,* 19 Md.App. 428, 436, 311 A.2d 822 (1973). Where the defendant, in committing a felony, caused physical, psychological, or economic injury to the victim, a presentence report may also include a Victim Impact Statement. § 4–609(c)(2)[2]. Section

---

**1.** Unless otherwise stated, all statutory sections noted in this opinion refer to Article 41 of the Maryland Annotated Code.

**2.** A typical Victim Impact Statement identifies the victim of the offense; itemizes any economic loss suffered by the defendant; identifies any physical injury suffered by the victim as a result of the offense along with its seriousness and permanence; describes any changes in the victim's personal welfare or familial relationships as a result of the offense; identifies any request for psychological services

4–609(b) mandates that "presentence reports are confidential and not available for public inspection except upon court order."

On January 24, 1992, John Thanos was convicted of the first degree murder of two teenagers from Middle River, Maryland. Thanos's trial then moved into its penalty phase, in which the State sought the death penalty for both convictions. During this phase, the judge admitted into evidence, under seal, for the sentencing jury's consideration, a redacted version of Thanos's presentence report. On January 30, 1992, however, the circuit court declared a mistrial in the penalty phase of the trial because statements made by Thanos were used by a state psychiatrist in violation of Thanos's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The day after the court declared the mistrial, the Baltimore Sun Company, one of its reporters, Glenn Small (collectively "The Sun"), and four television stations intervened in the underlying criminal case to seek access to (a) a videotape in which Thanos confessed to the crimes at issue and (b) the redacted version of Thanos's presentence report. With respect to their request for the presentence report, the news organizations argued that "anything that is introduced into evidence in a case is clothed with the First Amendment right of access" and that, without access to the presentence report, the media would be unable to accomplish their mission of informing the public accurately as to Thanos's case. Thanos objected to the disclosure of the report. While the circuit court granted the news organizations' request for access to the videotape, it denied them access to the presentence report, explaining:

> Article 41, Section 4–609 makes that information confidential. It's just that simple. It is not confidential as to

---

initiated by the victim or the victim's family as a result of the offense; and contains any other information related to the impact of the offense upon the victim or the victim's family that the court requires. § 4–609(c)(3).

the sentencer, be it a judge or a jury. In this case, it was the jury. The jury got to read it as the sentencer. The confidentiality aspect is as to the public. It's not a decision I've made. It's a decision the legislature has made and the statute does not contain an exception as suggested by [The Sun] that it should have in it. Perhaps it should. The legislature either didn't consider that, or it wasn't presented to them. In any event, that motion will be denied.

On February 11, 1992, The Sun noted an appeal of the circuit court's decision. Shortly thereafter, we granted The Sun's request to expedite consideration and advance the time for briefing and oral argument in this case. The Sun argues that the First Amendment and the common law provide a right of access to the redacted version of the presentence report (The Sun does not seek the "raw" report) and require reversal of the circuit court's decision to the contrary. The State, to which we granted the right to intervene before us, asserts that the public has only a qualified right to inspect and copy a presentence report, and that this case should be remanded so that the circuit court can exercise its discretion to determine which parts, if any, of the presentence report may be disclosed. Thanos maintains that there is no right of access to the presentence report.[3]

### (ii)

We initially consider Thanos's position that there is no right of access to the report. The Supreme Court has

---

**3.** We were informed at oral argument that, in the three months between the time when this appeal was noted and the case was argued before us, Thanos was tried and convicted of other capital offenses in St. Mary's County. The Sun intervened in that case and was provided a redacted presentence report which, we were told, is different from, and shorter than, the redacted presentence report which was entered into evidence, under seal, in this action. We were also informed that Thanos's sentencing trial in the present case is now scheduled to begin on June 1, 1992 and that he has waived his right to have a jury sentence him.

expressly recognized a "common law right of access" to judicial records. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). *See also Baltimore Sun v. Colbert*, 323 Md. 290, 305, 593 A.2d 224 (1991) ("there is a common law right to inspect and copy judicial records and documents"). In Maryland, however, that right of access has been eliminated by the General Assembly's specific mandate, in Art. 41, § 4–609(b), that "presentence reports are confidential and not available for public inspection, absent a court order." *Compare United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989) (finding a common law right of access to presentence reports prepared pursuant to the very different provisions of Fed.R.Crim.Proc. 32(c)(3), *see infra* n. 6). *See also United States v. Schlette*, 842 F.2d 1574, 1582, *amended*, 854 F.2d 359 (9th Cir.1988). Thus, Thanos is partially correct; there is no common law right of access to the report.

■ A number of courts have, however, also expressly recognized a First Amendment right of access to certain judicial records in criminal cases. *See, e.g., In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir.1986); *United States v. Smith*, 776 F.2d 1104, 1111–12 (3rd Cir.1985); *United States v. Peters*, 754 F.2d 753, 763 (7th Cir.1985); *In re Globe Newspaper Co.*, 729 F.2d 47, 51, 59 (1st Cir.1984). In those relatively few situations in which a presentence report is *introduced into evidence*, it would seem that there is a First Amendment right of access to the report. *See, e.g., United States v. Posner*, 594 F.Supp. 930 (S.D.Fla. 1984), *aff'd on other grounds*, 764 F.2d 1535 (11th Cir.1985) (First Amendment right to statutory confidential tax returns which have been entered into evidence); *United States v. Carpentier*, 526 F.Supp. 292, 294–95 (E.D.N.Y. 1981) (First Amendment right to tapes admitted into evidence without seal during a public sentencing). *See also United States v. McKnight*, 771 F.2d 388, 391 (8th Cir.1985) (confidential presentence reports are not considered "public

records, except to the extent that they or portions of them are placed on the court record").

In deciding whether the public has a First Amendment right of access, the Supreme Court has made two inquiries: (1) "whether the place and process have historically been open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740–2741, 92 L.Ed.2d 1 (1986).[4] Here, those determinations are not difficult. Documents entered into evidence in criminal proceedings have historically been open to the general public and that public access plays a "positive," indeed critical, role in ensuring the fairness of our judicial system. *See generally Nixon v. Warner Communications, Inc.,* 435 U.S. at 609, 98 S.Ct. at 1317; *Cox*

---

**4.** It is, we believe, extremely doubtful that there is any First Amendment right of access to Maryland presentence reports absent their entry into evidence. The better view seems to be to consider media access to a presentence report separate and apart from media access to the sentencing hearing. *See United States v. Corbitt,* 879 F.2d at 229. *See also United States v. Smith,* 776 F.2d 1104, 1112–13 (3rd Cir.1985); *United States v. Dorfman,* 690 F.2d 1230, 1234 (7th Cir. 1982); *United States v. Santarelli,* 729 F.2d 1388, 1390–91 (11th Cir. 1984). Thus, a court should examine the sentencing hearing, and then the presentence report itself, to determine as to each, independently, if there is a First Amendment right of access. With regard to the first prong of that determination, *i.e.,* the historical practice, sentencing proceedings in Maryland, as pointed out by The Sun, have historically been open to the public, *Huffington v. State,* 304 Md. 559, 500 A.2d 272 (1985), *cert. denied,* 478 U.S. 1023, 106 S.Ct. 3315, 92 L.Ed.2d 745 (1986); presentence reports in Maryland, as elsewhere, have traditionally been regarded as confidential. *See, e.g., Haynes v. State,* 19 Md.App. 428, 432, 311 A.2d 822 (1973); *United States v. Anderson,* 724 F.2d 596, 598–99 (7th Cir.1984). Hence, although historically open sentencing hearings do implicate First Amendment rights, historically confidential presentence reports do not appear to implicate those rights. *See United States v. Corbitt, supra,* 879 F.2d at 229. Moreover, with regard to the second prong, *i.e.,* the benefit to be gained from public access, it seems clear, as explained in part iii within, that public disclosure of a confidential presentencing report would not promote the effective functioning of the probation office or sentencing court and, thus, public access to confidential presentence report plays no "positive role" in the sentencing process. *Id.*

*Broadcasting Corp. v. Cohn,* 420 U.S. 469, 495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975); *United States v. Hubbard,* 650 F.2d 293, 323 (D.C.Cir.1981); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 427 (5th Cir.1981). Thus, we must reject Thanos's claim that there is no right of access to this report.

The public's right of access, even when grounded in the First Amendment, while well-recognized, is not absolute. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603–05, 102 S.Ct. 2613, 2618–20, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980). Rather, it may be limited when "an important countervailing interest is shown." *State v. Cottman Transmission Systems, Inc.,* 75 Md.App. 647, 659, 542 A.2d 859 (1988) (*quoting Publicker Indus. Inc. v. Cohen,* 733 F.2d 1059, 1071 (3rd Cir.1984)). The denial of access must "be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir.1988). *See also Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984); *Globe Newspaper,* 457 U.S. at 607, 102 S.Ct. at 2620. Accordingly, we turn to consideration of the proper application of the First Amendment right of access in this case.

(iii)

Article 41, § 4–609(b) provides in pertinent part:

The presentence reports are confidential and not available for public inspection except on court order.

All parties, including Thanos, seem to agree that if a presentence report is entered into evidence at trial, without seal or reservation, it is a matter of public record to which the public is entitled complete access.[5] Conversely, all agree, absent the introduction into evidence of a presen-

---

**5.** The press has no greater right of access to documents or information than does the general public. *Branzburg v. Hayes,* 408 U.S. 665,

tence report (or an order that it be "available for public inspection"), there is no right of access to it. The question on which The Sun and the State part company is whether a presentence report, like that at issue here, which has been entered into evidence in a sentencing proceeding, can be sealed and so kept from public access. The State maintains that § 4–609 "identifies" compelling governmental interests that in the proper case bar the public from some or all access to such a report. The Sun claims that Maryland law requires that such a report be regarded as a matter of public record to which the public is entitled complete access.

Although the State concedes that "the important government interest[s] in confidentiality is not specifically stated in the statutory language" of the Maryland statutes governing presentence reports, or their "legislative history," it asserts that those statutes serve "numerous and varied governmental interests that support confidentiality" here. Among the important governmental interests suggested by the State, and discussed and approved in relevant federal case law, are the following:

1. The need to encourage individuals, including the defendant, with relevant information to provide it to the Probation Office for ultimate transmittal to the sentencer with assurance of confidentiality. *See Williams v. New York*, 337 U.S. 241, 249 [69 S.Ct. 1079, 1084, 93 L.Ed. 1337] (1949); *United States v. McKnight*, 771 F.2d 388, 390 (8th Cir.1985), *cert. denied*, 475 U.S. 1014 [106 S.Ct. 1194, 89 L.Ed.2d 309] (1986); *United States v. Anderson*, 724 F.2d 596, 598 (7th Cir.1984); *United States v. Charmer*, 711 F.2d 1164, 1171 (2d Cir.1983); *United States v. Greathouse*, 484 F.2d 805, 807 (7th Cir.1973).

2. Considerations of the victim's privacy and that of their families. *See United States v. Charmer, supra*, 711 F.2d at 1175.

684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972); *Nixon v. Warner Communications, supra*, 435 U.S. at 609, 98 S.Ct. at 1317.

3. Protection of the defendant's privacy, including references to his medical history. *Id.; United States v. Corbitt, supra,* 879 F.2d at 235.

4. Protection of confidential source information, cooperation by the defendant with ongoing criminal investigations, and grand jury material. *United States v. Corbitt, supra,* 879 F.2d at 235.

5. Concern that the report includes irrelevant, unsupported statements which the defendant chose not to challenge. *Id.*

6. Protection of third persons from release of embarrassing personal information. *Id.*

7. Avoidance of prejudice to the defendant prior to the imposition of sentence. *United States v. Alexander,* 860 F.2d 508, 515 (2d Cir.1988).

There are, we believe, strong, indeed compelling, interests served by preserving the confidentiality of presentence reports. One of the most important is ensuring that the sentencer, whether it be judge or jury, receives sufficient information to enable it to determine the proper sentence. Clearly, "publication of the contents of a presentence report [to third persons] would tend to discourage full disclosure" to the sentencer from its best sources, *i.e.,* defendants themselves or informants, who are afraid of the defendant or his associates or who do not wish to be associated with a convicted criminal. *United States v. Corbitt, supra,* 879 F.2d at 232; *id.* at 233–34. *See also United States Dept. of Justice v. Julian,* 486 U.S. 1, 12, 108 S.Ct. 1606, 1613, 100 L.Ed.2d 1 (1988).

Another significant interest served by preserving the confidentiality of these reports is preventing the disclosure of grand jury materials and other information that may compromise ongoing criminal investigations. *Id.; United States v. Boesky,* 674 F.Supp. 1128, 1129–30 (S.D.N.Y.1987). Preserving the right of privacy of victims and the defendant is another very important interest which we believe is served by maintaining this confidentiality. Presentence reports typically contain such usually private material as a

defendant's juvenile adjudications, results of a defendant's physical and mental health and intelligence tests, history of a defendant's abuse, hostilities, sexual deviations, family problems, and disorders, as well as victim impact statements detailing the emotional trauma of the victim's family. *See* Probation Div. of the Admin. Office of the U.S. Courts, *The Presentence Investigation Report* 1, 10–16 (2d ed. 1984). *See also, Baker v. State,* 3 Md.App. 251, 257, 238 A.2d 561 (1968). As Judge Rosalyn Bell explained in *Doe v. Shady Grove Hosp.,* 89 Md.App. 351, 361, 598 A.2d 507 (1991), although not expressly articulated in the Constitution, the right to privacy is "on equal footing with" and "indispensable to the enjoyment of the explicitly defined rights." Thus, the right to privacy is one of our most cherished rights; it should not, and cannot, be lightly infringed upon.

The Sun properly acknowledges the legitimacy of these interests, some of which "might," it concedes, "support a denial of access to all or portions of a presentence report in another case." It makes three arguments as to why these interests should not be considered here. First, The Sun argues that we should not consider them because they were not raised below. True, these interests were not raised below; however, the speed with which this matter was determined by the circuit court, probably at the request and behest of the media, undoubtedly contributed to this unfortunate result. Thus, The Sun's argument seems somewhat graceless. In any event, when the interests of justice require it, an appellate court can, and will, reach an argument not raised below. *See, e.g., Baltimore Sun v. Colbert, supra,* 323 Md. at 301, 593 A.2d 224 (although The Sun did "not specifically challenge the adequacy of the notice given by the [trial] court of the closure motion" the Court of Appeals exercised its "jurisdiction under Md.Rule 8–131(a)" and ruled on the issue). *See also Atlantic Mutual v. Kenney,* 323 Md. 116, 122–123, 591 A.2d 507 (1991). This is clearly such an occasion. It will benefit no one for us to rule here without supplying as much direction as possible as

to the difficult matters to be weighed by the trial court on remand.

██  The Sun's remaining closely-related arguments as to why the interests articulated by the State, and explicated in the federal case law, should not be considered in determining the right of access to the presentence reports at issue here are based on the claim that the Maryland statute itself, unlike the federal scheme, expressly provides that presentence reports are not confidential when introduced into evidence in a capital case.  Understanding this argument requires an examination of several Maryland statutes.  Article 41, § 4–609 provides in pertinent part:

> (b) The parole and probation agents of the Division shall provide the judge of the court with presentence reports or other investigations in all cases when requested by any judge.  The *presentence reports are confidential and not available for public inspection except upon court order.*  However, presentence reports shall be made available, upon request, to the defendant's attorney, the State's Attorney, a correctional institution, a parole or probation, or pretrial release official of this State, any other state, the United States, or the District of Columbia, and a public or private mental health facility in any of those jurisdictions, if the individual who is the subject of the report has been committed or is being evaluated for commitment to the facility for treatment as a condition of probation.

*  *  *  *  *  *

> (d) *In any case* in which the death penalty or imprisonment for life without the possibility for parole is requested *under Art. 27, § 412, a presentence investigation,* including a victim impact statement, shall be completed by the Division of Parole and Probation, and *shall be considered by the court or jury before whom the separate sentencing proceeding is conducted* under Art. 27, § 412 or 413.

(emphasis added.) Art. 27, § 413(c)(1)(iv) provides, in turn, that among the type of evidence "which is admissible" in a sentencing proceeding is "any pre-sentence investigation report."

In a nutshell, The Sun's claim is that: (1) since § 4–609(d) requires that in a capital case (or one involving a request for life imprisonment without possibility of parole) the presentence report "shall be considered" by the sentencing authority; and (2) since Art. 27, § 413(c)(1)(iv) provides that presentence reports are "admissible into evidence" at these sentencing proceedings, then a court's admission of the presentence report into evidence at the sentencing hearing constitutes the "court order" making those reports "available for public inspection" under § 4–609(b). Alternatively, The Sun asserts that, at the very least, the admission into evidence of the presentence report at the sentencing hearing constitutes a waiver of the confidentiality provision in § 4–609(b).

The Maryland statutory scheme governing the use and disclosure of presentence reports is markedly different from the federal scheme.[6] The plain language of the Mary-

---

6. Fed.R.Crim.Proc. 32(c)(3) provides in pertinent part:

   (A) Before imposing sentence the court shall upon request permit the defendant or his counsel if he is so represented, to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

   (B) If the court is of the view that there is information in the presentence report which should not be disclosed under subdivision (c)(3)(A) of this rule, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant or his counsel an oppor-

land statutes does not, however, support The Sun's argument. Rather, that language suggests that presentence reports "are confidential and not available for public inspection except upon court order," a court order which specifically makes them available for public inspection. This is particularly so in light of the fact that it is well-established that statutory confidentiality need not be lost simply because confidential items are introduced into evidence or otherwise filed and considered by a court. *See, e.g., Nixon v. Warner Communications, Inc., supra,* 435 U.S. at 603, 98 S.Ct. at 1314 (tapes played for jury and public and admitted into evidence at criminal trial remain confidential under the Presidential Recordings Act, 88 Stat. 1695, note following 44 U.S.C. § 2107 (1970 ed., Supp. V) and so media not entitled to reproduce them); *In re Knoxville News–Sentinel Co.,* 723 F.2d 470, 477 (6th Cir.1983) (documents filed with and considered by a court in dispositive ruling remain confidential under Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* and so media not entitled to access to them); *Applications of Kansas City Star,* 666 F.2d 1168 (8th Cir.1981) (documents introduced into evidence in bond revocation hearing remain confidential under Omnibus Crime Control & Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* and so media not entitled to access to them).

Moreover, there is nothing in the legislative history of the Maryland statutes that supports The Sun's theories. The

---

tunity to comment thereon. The statement may be made to the parties in camera.

(C) Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government.

Thus, the federal rule, unlike the Maryland statutes, contains an articulation of the interests to be considered in determining whether to release a presentence report, no express provision that the report is confidential, no requirement that the sentencer consider it and no provision that it is "admissible evidence" at a sentencing hearing. Both the state and federal schemes, however, clearly serve the same important interests. *Compare Huffington v. State,* 304 Md. 559, 577–83, 500 A.2d 272 (1985), *reconsid. denied,* 305 Md. 306, 503 A.2d 1326 (1986), *and Bartholomey v. State,* 267 Md. 175, 193–194, 297 A.2d 696 (1972), *with United States v. Corbitt, supra* (and cases cited therein).

statutory predecessor of § 4–609(b), which was originally enacted in 1968, provided only that presentence reports were to be provided to a *judge* in certain cases when requested by the judge. 1968 Md.Laws Ch. 457. In 1972, that statute was amended to provide both an express confidentiality requirement and limited disclosure, *i.e.*, "presentence reports shall be made available upon request to the defendant's attorney and the State's Attorneys Office. However, the presentence reports shall be confidential and not available for public inspection except upon court order of for use by any correctional institution." 1972 Md.Laws Ch. 532.[7] It was not until six years later, in 1978, that Article 27, § 413(c)(1)(iv), was first enacted providing that presentence reports are "admissible" in sentencing proceedings in all cases in which the death penalty or imprisonment for life without possibility of parole is requested. 1978 Md.Laws Ch. 3. Moreover, it was not until 1983 that the statutory predecessor of § 4–609(d) was enacted, providing that presentence reports shall be considered by sentencing authority in those cases. 1983 Md.Laws Ch. 297. *See Nelson v. State*, 315 Md. 62, 65–72, 553 A.2d 667 (1989) (outlining legislative history of § 4–609(c)); *Haynes v. State, supra*, 19 Md.App. at 432, 311 A.2d 822.

This legislative history does not indicate the General Assembly ever intended that a court's order permitting the entry into evidence of a presentence report at a capital sentencing hearing, as authorized by § 4–609 and Art. 27, § 413(c)(1)(iv), should constitute the "court order" removing the confidentiality of those documents in order to make them available for "public inspection" under § 4–609(b). Nor does the legislative history support The Sun's claim that consideration of a presentence report by the sentencer in a capital case was intended by the General Assembly

---

7. The statute was subsequently amended in 1973, 1981, and 1982, until it reached the form in which it is found now in § 4–609(b). *See* 1973 Md.Laws Ch. 456; 1981 Md.Laws Ch. 300; 1982 Md.Laws Ch. 33.

automatically to waive the legislatively mandated confidentiality of a presentence report.[8]

Furthermore, also contrary to The Sun's claims, federal case law does not mandate a contrary result. Noting that ordinarily presentence reports are not admitted into evidence in federal proceedings, The Sun asserts, relying on *United States v. McKnight, supra,* 771 F.2d at 388, that when such reports are admitted into evidence, the federal courts have held that they lose their confidentiality. In *McKnight,* the trial judge, over the defendant's objection, "read into the record the net worth of each defendant, as stated in [their presentence report] report." 771 F.2d at 389. On appeal, the Eighth Circuit affirmed the holding that "presentence reports are considered as confidential reports to the court and are not considered public records, except to the extent that they or portions of them are placed on the court record or authorized for disclosure to serve the interests of justice." *Id.* at 391. The difference between *McKnight* and the case at hand, however, is that, in *McKnight,* material from the presentence report that was introduced into evidence was not, at that time, "under seal."[9] The distinction between documents that are admit-

---

8. We also note that Maryland Rule 4–341 specifically provides that a presentence report "is not a public record and shall be kept confidential as provided in Code, Article 41, § 4–609." Interestingly, Rule 4–341 refers to Article 41, § 4–609 as a whole and does not single out subsections (b) or (d). Rule 4–341 is derived from former Maryland Rule 771 and M.D.R. 771. Maryland Rule 771(b) specifically tracked the language of the statutory predecessor of § 4–609(b) and provided that a presentence report "is not a public record and shall be kept confidential." *See Hall v. State,* 292 Md. 683, 692, 441 A.2d 708 (1982).

9. *People v. Private Sanitation Industry,* 136 Misc.2d 612, 519 N.Y.S.2d 106 (Co.Ct.1987) is similarly inapplicable to the facts at hand. There, the trial court held that a newspaper was entitled to access to a presentence memorandum because the information disclosed was information that had "already been disclosed in prior court proceedings." *Id.,* 519 N.Y.S.2d at 110. Here, prior to The Sun's intervention, the defendant argued successfully that the State should not be permitted to refer to the presentence report in open court. Thus, this is not a situation where a confidential document has been discussed in open

ted in evidence, and so are part of the public record, and those that are admitted under seal and so are not part of the public record, is well recognized. *See United States v. Carpentier,* 526 F.Supp. at 295 ("that the tapes were not played at the hearing ... is not dispositive in light of the fact that, by the admission of the tapes into evidence *without seal,* they became part of the public record") (emphasis added).

For example, in *United States v. Alexander,* 860 F.2d 508, 515 (2d Cir.1988), the sentencing judge considered grand jury materials filed in the State's sentencing memorandum after the materials were ordered released for that specific purpose. Members of the press and others were given access to the filed sentencing memorandum. The defendant appealed on the grounds that the grand jury materials should not have been disclosed to the public and that the public disclosure generated adverse publicity which tainted the sentencing. The Second Circuit agreed that the disclosure to the public was inappropriate, analogizing it to a presentence report. On the facts before it, the court upheld the sentence, finding that there had been no prejudice to the defendant, but noted:

> [W]e see no reason why the government cannot state its sentencing position in open court in terms that do not reveal matters that occurred before the grand jury, furnishing the supporting grand jury material to the court *in a sealed filing.* This would parallel the treatment given to presentence reports prepared by the federal probation office. Such reports are used by the court in sentencing; but they are not part of the public record, and they are unavailable to persons other than the court, the parties,

court and, therefore, may be accessible to third parties. *See, e.g., Littlejohn v. BIC Corp.,* 851 F.2d 673, 678 (3rd Cir.1988).

and the probation office, except on a showing of compelling need.

*Id.* at 514 (emphasis added).

Accordingly, we reject The Sun's position that the Maryland statutory scheme requires a presentence report admitted in evidence, under seal, to be regarded as a public record, entitled to no confidentiality.[10] *See Application of National Broadcasting Co., Inc.*, 635 F.2d 945, 952 n. 4 (2d Cir.1980); *United States v. Carpentier, supra*, 526 F.Supp. at 295. A presentence report does not automatically become a public record when entered into evidence in a capital sentencing hearing. Rather, a court can, employing the proper procedures, consider the numerous important interests set forth within and, in the proper circumstances, with the proper findings, exercise its discretion and seal all or part of the report.

(iv)

The difficulty here is that the circuit court neither followed the required procedures nor made the required

---

**10.** We need not, and do not, reach the question of whether a presentence report in a first degree murder case is always admitted into evidence, or always to be treated as admitted into evidence. The Legislature has provided that in these cases the report "shall be considered" by a sentencing court or jury, Art. 41, § 4–609, and that the report is among the "type of evidence" that "is admissible in a sentencing proceeding." Art. 27, § 413(c)(1)(iv). Sentencing judges have traditionally been entitled to consider various kinds of material, letters, etc., which are never entered into evidence. *See, e.g., Williams v. New York*, 337 U.S. 241, 250–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949); *United States v. Alexander, supra*, 860 F.2d at 514 (in sentencing "there is no requirement that the court consider only evidence adduced in open court"); *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575 (1965). This suggests that the presentence report need not be entered into evidence (or considered as evidence). On the other hand, the General Assembly has specifically provided that, in cases governed by Art. 27, § 413 (and only those cases), a sentencing judge or jury "shall" consider the presentence report and has characterized these reports as a "type of evidence." *See* Art. 27, § 413(c)(1)(iv). *See also Nelson v. State, supra*, 315 Md. at 62, 553 A.2d 667. This, in turn, indicates that in those particular cases the Legislature may intend that presentence reports be admitted into evidence or treated as entered into evidence.

findings. In order to justify the seal of a presentence report that is in evidence in the sentencing of one convicted of first degree murder, a court must "provide notice of counsel's request to seal and an opportunity to object to the request before the court ma[kes] its [final] decision." *Baltimore Sun v. Colbert, supra,* 323 Md. at 305, 593 A.2d 224 (*quoting In re Knight Pub. Co., supra,* 743 F.2d [231] at 235 [ (4th Cir.1984) ] ). A motion to seal "should be docketed reasonably in advance of the request if practicable." *Colbert,* 323 Md. at 305, 593 A.2d 224. Of course, a court may "provisionally" seal documents "pending assessment of justification for a request to seal." *In re Reporters Comm. for Freedom of the Press,* 773 F.2d 1325, 1339 (D.C.Cir.1985) (Scalia, J.); *In re Washington Post Co., supra,* 807 F.2d at 391. Those objecting to the disclosure of the report have the burden of persuading the court that "the interest sought to be protected" requires that the report or portions of it, although in evidence, should be sealed. *See, e.g., Colbert,* 323 Md. at 306, 593 A.2d 224; *United States v. Gerena,* 869 F.2d 82, 85 (2d Cir.1989); *In re Washington Post Co., supra,* 807 F.2d at 391–92; *In re Knight Pub. Co., supra,* 743 F.2d at 235 n. 1; *United States v. Posner,* 594 F.Supp. 930, 935 (S.D.Fla.1984).

■ When ruling on a motion to seal, a court must then "articulate the interest sought to be protected by the seal, supported by specific findings." *Colbert,* 323 Md. at 305–06, 593 A.2d 224 (*citing In re Knight Pub Co.,* 743 F.2d at 235). The seal order should be "as narrow as possible to protect the interests asserted in support of closure." *Colbert,* 323 Md. at 306, 593 A.2d 224. By stating its rationale and why alternatives to sealing were rejected, the trial court provides an adequate record for review; without such a record effective review is not possible.

■ Because the circuit court did not follow these procedures or make these findings, we must remand so that it can do so and weigh the First Amendment right of access against the need for confidentiality required by compelling

interests, some of which are outlined within. In engaging in this difficult balancing process, the trial court will obviously find some interests of more importance in some cases than others, depending on the nature of the crime, defendant, victim, and report itself. If, upon completion of this process, the court concludes that one or more compelling interests served by maintaining the confidentiality of all or part of the report outweigh the First Amendment right of access to it, then the court may seal all or part of the report.

Finally, in making its determination, "[t]he court should consider alternatives to a broad seal, including the option of redacting portions of pleadings or transcripts." *Colbert,* 323 Md. at 306, 593 A.2d 224. We noted at the outset that the presentence report at issue here was redacted. Neither The Sun nor any other party has suggested any right of access to the raw, unredacted report or indeed to any report that is not entered into evidence.[11] The raw report was never entered into evidence (and typically is not entered into evidence) and so there would appear to be no basis to claim a right of access to it. The circuit court may determine that further redactions would adequately serve the need for confidentiality and yet satisfy the right to access.

With the above principles in mind, we remand to the trial court so that it can determine whether all or part of the presentence report at issue here should be sealed.

ORDER OF THE CIRCUIT COURT FOR GARRETT COUNTY VACATED.

CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.

---

11. The mere filing of a confidential sealed presentence report in a court file does not constitute entry of that report into evidence. As noted within, this opinion only concerns presentence reports which are admitted into evidence in first degree murder cases. We need not, and do not, reach the question of whether there is a First Amendment right of access to presentence reports in any other situation. *But see supra* n. 4.