ROBERT L. DENNINGHAM *v.* JUDITH DENNINGHAM

[No. 1602, September Term, 1980.]

*Decided July 10, 1981.*

The cause was argued before WILNER, COUCH and MacDANIEL, JJ.

Robert L. Denningham, in proper person, appellant.

*Douglas I. Malcom* for appellee.

WILNER, J., delivered the opinion of the Court.

The parties to this dispute were married on November 9, 1963. They separated July 15, 1977, having in the meanwhile produced two children — Coren, born 1965, and Elena, born 1968. Prior to their actual separation, they signed a written Separation Agreement providing, among other things, that appellee (the wife) would have custody of the children and that appellant would pay to her $300 every two weeks for their support.

This litigation ultimately proceeded upon appellee's supplemental bill in the Circuit Court for Prince George's County, seeking a divorce *a vinculo matrimonii,* alimony, incorporation of the terms of the separation agreement into the decree, and counsel fees. Virtually everything, including custody, was in dispute. On June 29, 1979, apparently with the acquiescence of both parties, the court ordered its Mental Hygiene Consultation Service to conduct an investigation for the purpose of "evaluating everyone in the Denningham family" and to file a report with the court. It is evident from what subsequently occurred that this investigation, and the report, was ordered primarily in connection with the issues of custody and visitation; and we shall hereafter refer to it as the "custody investigation."

On July 27, 1979, prior to completion of the custody investigation but following an evidentiary hearing, the court proceeded to dispose of the other matters in dispute. It entered a decree that day that (1) granted appellee a divorce *a vinculo matrimonii;* (2) allowed temporary custody of the two minor children of the parties to remain with appellee; (3) determined that a $7,670 judgment be entered against appellant for unpaid child support required by the couple's separation agreement; (4) ordered appellant to pay $433 per month as temporary child support; and (5) required that the parties be evaluated by the Circuit Court Mental Health and

Hygiene Service preparatory to any "final" custody determination.[1]

On August 15, appellant discharged his counsel and advised the court clerk that he would thenceforth be representing himself. On September 20, the court routinely sent a notice to counsel (but not to appellant) advising that the custody investigation report had been received, that "counsel" should contact the Mental Hygiene Consultation Service "for information on this report," and that the matter would be scheduled for further hearing. Appellant, of course, was unaware of the report.

On September 25, 1979, appellant filed a motion to revise the July 27 decree, seeking to reduce the amount of the monetary judgment entered against him therein. On the same day, he noted an appeal to this Court from that decree.[2]

On November 8, 1979, apparently in anticipation of the further proceeding pertaining to custody and visitation, the court filed a "Memorandum of Court," calling attention to the custody investigation report and stating that "[i]nasmuch as this report is confidential and the defendant . . . is now representing himself in this matter, the court has decided in all fairness that the contents of the aforementioned report will not be made available to counsel for the plaintiff or the defendant."

The parties returned to court on December 7, 1979, presumably in connection with appellant's motion to revise

---

1. It is not clear from the record why this last item was necessary. The order of June 29 ordered the investigation and directed the parties to report to the Service's Intake Office within forty-eight hours. The Service's report, dated September 18, 1979, does not indicate when the interview with the parties occurred.

2. The court's decree was originally dated August 27, 1979, although the docket entries show that it was entered on July 27, 1979. At some point, the error was caught and the court amended the decree by striking the word "August" and inserting the word "July." It is clear that the docket entry is correct and that the decree was actually signed and filed on July 27, 1979. Nevertheless, on October 5, 1979, in consideration of the error, the court issued an order "that the defendant's Order for Appeal filed herein on September 25, 1979, be treated as having been timely filed. . . ." Because appellant's present appeal does not rest upon the September 25 order for appeal, it is not necessary for us to consider whether that order was a valid or proper one. See Maryland Rule 1012.

the monetary judgment. In view of appellant's appeal, however, the court declined to consider the motion or even the pending matters of "permanent" custody and visitation. It did consider appellant's request to read the custody investigation report, but again rejected that request. In so doing, it stated "for the record," its reason: "that these reports are confidential, they are not designed for the parties, they are designed for the attorneys. Mr. Denningham was represented during the trial and he is now not represented, and I have decided that in fairness, since the report was prepared for my benefit, *I would read the report and I would not let you read the report, either.*" (Emphasis supplied.)

Appellant dismissed his September 25 appeal to this Court on December 20, 1979. Nothing happened, however, for over eight months. On September 3, 1980, the parties returned to court in connection with the matters of custody, visitation, child support, and appellant's year-old motion to revise the monetary judgment, which motion the court quickly denied. The balance of the two-day proceeding concerned custody and visitation, and was taken up primarily with testimony presented by and on behalf of appellant, whose complaint was that appellee has been endeavoring to alienate the children from him. The court interviewed the children in chambers, alone — apparently without even a court stenographer [3] — and announced that "they are adamant that they want to live with their mother" and that even weekend overnight visits "is going to be difficult for them."

At the conclusion of the proceeding, the court, mentioning both its own interview with the children and the custody investigation report and recommendation,[4] determined that

---

[3]. Because the private interview and the exclusion of even a court reporter was without objection and because appellant makes no complaint about it in this appeal, the correctness of that procedure is not before us. We do, however, take this opportunity once again to stress our belief that, even though the parties can affirmatively waive the presence of a reporter, the better practice is to have a reporter present in order that a complete record will be available on appeal. *See Nutwell v. Prince George's County Department of Social Services,* 21 Md. App. 100 (1974).

[4]. The record reveals that a "follow-up" report was rendered by the Mental Hygiene Consultation Service on November 10, 1980, based upon an interview with the parties and the children on October 16, 1980.

"there really has been no showing that I should take the children away from the mother and place them with [appellant]." On October 17, 1980, the court entered an order awarding permanent custody of the children to appellee, requiring appellant to pay child support of $433 a month, establishing a specific visitation schedule, and directing the Mental Hygiene Consultation Service to review the case in five months and again in ten months.

Appellant responded with a motion for rehearing which was denied on November 3, 1980. The next day, he filed this appeal, raising eight issues that go to virtually everything the court decided. He complains about the money judgment, visitation, custody, and child support on a variety of constitutional, procedural, and substantive grounds. In the interests of clarity, we have divided the issues raised by appellant into two categories — those that question the monetary judgment of July 27, 1979, and those that attack the custody, visitation, and child support decisions.

## The Monetary Judgment

Appellant's first three complaints concern the entry of the monetary judgment for child support arrearages. Two of them attack the judgment directly on procedural grounds; the third deals with the court's refusal to grant appellant's motion to set it aside on the ground that the separation agreement from which the judgment arose was induced by fraud.

The money judgment challenged here was part of the July, 1979, divorce decree that resolved all pending matters between the parties except permanent custody,[5] which raises the initial question of whether the current appeal of the money judgment — filed more than a year after that

---

5. Appellant suggested at oral argument that the issues of child support and visitation were also left unresolved. We do not agree. Naturally, had the court ultimately awarded custody of the children to appellant, adjustments in the child support and visitation orders would have been required; but those matters, as with custody, are always subject to further court order. Insofar as open, current disputes are concerned, the decree settled everything except "permanent" custody.

judgment was entered — is a timely one under Maryland Rules 605a and 1012.

In *Pappas v. Pappas,* 287 Md. 455 (1980), the Court of Appeals reminded both bench and bar that Maryland Rule 605a is a general rule and that it applies to domestic cases. With one possible caveat, which it unfortunately left somewhat imprecise, the Court made clear that a divorce decree which adjudicates less than all of the claims pending before the trial court is not a final and appealable one except to the extent that the determination and direction required under the rule is validly made, and that, unless dealing with an order for which an interlocutory appeal is allowed under Courts article, § 12-303, no part of such a decree may be appealed until finality is achieved through the resolution of the remaining issues.

The caveat referred to appears on p. 463 of 287 Md. The decree at issue in *Pappas* granted a divorce and awarded alimony, child support, guardianship of the minor children, and counsel fees, but reserved ruling on the issues of property division, custody, and the *amounts* of alimony, child support, and counsel fees. Absent a Rule 605a determination and direction, the Court concluded that too much had been left open — that less than all the claims had been decided and that no part of the decree was final or appealable. It then said, however:

> "For purposes of this opinion it is not necessary for us to determine whether the reservation of the amount of counsel fees or the reservation of the amount of alimony and support without more would render the decree other than final. It is sufficient for our purposes to hold that where the issue of property division, the amount of counsel fees, *and* the amount of alimony and support remain to be determined, the judgment was not final." (Emphasis in original.)

The Court did not explain in this caveat what is so special about the *amounts* of support (spousal or child) that might exempt a reservation of those items from the operation of the

rule. Was it suggesting perhaps that those items may be different because they are always subject to the further jurisdiction of the court, and therefore never achieve the status of true finality? If so, it would seem that orders of child custody and visitation should be treated likewise.

Read literally (and until *Pappas* rather consistently), Rule 605 a would seem to admit of no exceptions — that a decree which fails to resolve a pending issue in dispute, whether support or custody, does indeed adjudicate "less than all the claims" and therefore does "not terminate the action as to any of the claims" unless the authorized determination and direction is made. *See Estep v. Estep,* 285 Md. 416, 423-24 (1979).

The Court's suggestion in *Pappas* that there might be exceptions to the rule, at least with respect to support, ought to be clarified. Litigants (and their attorneys) must have some assurance as to whether a divorce rendered by a decree that leaves open an issue of support (or custody or visitation) is or is not final. There is more at stake than the timeliness of appeals, although that, of course, is the heart of the matter.

In this case, it makes no practical difference whether the current appeal is timely. We have examined the substance of appellant's complaints about the money judgment and find them to be without merit. The trial court made its findings based on disputed evidence, and we find neither clear error in the findings nor an abuse of discretion in the court's declining to revise them. Thus, whether the current appeal is timely by virtue of Maryland Rule 605a or untimely by reason of Maryland Rule 1012, appellant will not prevail.

### Custody, Visitation, and Child Support

Appellant asserts that the court's decisions on custody, visitation, and child support deprived him of various constitutional rights. Appellee responds that appellant failed to raise these issues below. With one exception,

appellee is correct and we will not consider those issues. Maryland Rule 1085.

The one exception is appellant's assertion that he was denied due process of law when the court considered the custody investigation report in making its custody determination (and the concomitant child support and visitation conclusions) after it had refused to permit him to see the report. We agree that the court erred in that regard.

We must approach the use of custody investigation reports with a certain balance. The opinions of this Court and the Court of Appeals are replete with statements encouraging chancellors to utilize such reports and attesting to their value in arriving at custody determinations. *See, for example, Ouellette v. Ouellette,* 246 Md. 604 (1967); *Shanbarker v. Dalton,* 251 Md. 252 (1968); *Deckman v. Deckman,* 15 Md. App. 553 (1972); *Powers v. Hadden,* 30 Md. App. 577 (1976). *See also* Okpaku, *Psychology: Impediment or Aid in Child Custody Cases,* 29 Rutgers L. Rev. 1117 (1976). Indeed, it is the very reliance placed on these reports that creates the problem.

On the one hand, whether conducted by probation, social service, or medical agencies, custody investigation reports nearly always contain material that is sensitive and highly personal, material that ought to be kept confidential. Medical data, psychiatric opinions, details pertaining to lifestyles and intimate relationships are often recorded, as are the results of interviews with the children whose custody is at issue. That is why, in most cases, these reports are submitted to the court under seal and are dealt with differently than other exhibits in the case. It is also why the court may, in some instances, have a serious concern about allowing even the parties to see the contents of the report.

The counterweight, however, is that these reports consist largely of hearsay declarations — often double- or triple-level hearsay — as well as opinions of various social workers, medical or paramedical personnel, psychologists, teachers, and the like, which may or may not have a reasonable basis. Statements contained in a custody

investigation report have no special indicia of reliability. They are generally not under oath and often emanate from people having overt or covert bias. In many instances, the statements represent subjective feelings and perceptions rather than objective observations or empiric data. Their usefulness to the court is only as strong as their reliability, and that requires that they be subject to challenge in essentially the same manner as any other critical evidence.

We decided as much, at least implicitly, in *Draper v. Draper,* 39 Md. App. 73 (1978). In that case, a custody investigation report recommended that custody be awarded to the father. Counsel for the parties had read the report, although they had not been given copies of it. The father offered the report in evidence without calling its author as a witness, apparently without objection. In her case, the mother sought to call the author for cross-examination, not desiring to vouch for or be bound by the author's testimony. We concluded that the chancellor erred in refusing that request. *See also* Annot., *Right In Child Custody Proceedings To Cross-Examine Investigating Officer Whose Report Is Used By Court In Its Decision,* 59 A.L.R.3d 1337 (1974). Certainly, if it is error to deny the right to cross-examine the author of the report, it is even more blatant and grievous error to hide the report entirely from the parties and yet rely on it in making a decision.

This, indeed, is the uniform view that has been taken wherever the question has arisen. Absent consent or waiver, it is error for a court to admit and consider a custody investigation report without affording the parties an opportunity to read and challenge it. *See Kightlinger v. Kightlinger,* 439 P.2d 614 (Ore. 1968); *Williams v. Williams,* 130 N.E.2d 291 (Ill. App. 1955); *Lewis v. Lewis,* 534 S.W.2d 800 (Ky. 1976); *Gilmore v. Gilmore,* 341 N.E.2d 655 (Mass. 1976); *Mazur v. Lazarus,* 196 A.2d 477 (D.C. 1964); *Scott v. Scott,* 415 A.2d 812 (D.C. 1980); *Oltmanns v. Oltmanns,* 121 N.W.2d 779 (Minn. 1963); *In Re S__ M__ W__,* 485 S.W.2d 158 (Mo. App. 1972); *Hosking v. Hosking,* 318 So.2d 559 (Fla. App. 1975); Comment, *Use of Extra-Record Information in Custody Cases,* 24 U. Chicago L. Rev. 349

(1957); Annot., *Consideration of Investigation by Welfare Agency or the Like in Making or Modifying Award as Between Parents of Custody of Children,* 35 A.L.R.2d 629 (1954). *Cf. Kesseler v. Kesseler,* 225 N.Y.S.2d 1 (N.Y. 1962); *Larson v. Larson,* 140 N.W.2d 230 (Wis. 1966); and *Eastman v. Eastman,* 626 P.2d 1238 (Kan. App. 1981). See also *Cornwell v. Cornwell,* 244 Md. 674 (1966).

These decisions merely make manifest one of the cornerstones of our system of justice: the right of the parties to be aware of all of the evidence considered by the trier of fact in making an adjudicatory determination and to have the opportunity to challenge and answer that evidence. "Due process" encompasses that principle and requires that if a court bases its custody decision, even in part, on an independent report, the parties — or their attorneys — must be given the opportunity to examine the report and must be allowed the opportunity to cross-examine the investigator and to produce outside witnesses to establish any inaccuracies the report may contain. However sensitive the material may be, a party has a right to know what evidence is being considered by the court in judging his cause. A custody case can no more be tried and decided upon secret *ex parte* evidence than any other proceeding.

In this case, however, the court's error, though of constitutional dimension, was harmless. In order to justify a change of custody, appellant had the heavy burden of demonstrating " a strong reason affecting the welfare of the child." *Sartoph v. Sartoph,* 31 Md. App. 58 (1976), *cert. denied,* 278 Md. 732. "The reason for this rule is that the stability provided by the continuation of a successful relationship with a parent who has been in day to day contact with a child generally far outweighs any alleged advantage which might accrue to the child as a result of a custodial change." *Id.* at 67.

The children — daughters aged twelve and fifteen — had been in appellee's custody for the entire three years since the parties separated and, as we have noted, they expressed to the court their clear and unequivocal desire to remain with

338

appellee. There was no evidence in the case seriously suggesting that they were not being properly cared for or that their needs were not being adequately met.

Unlike many reports of this type, the custody investigation reports in question here relied primarily on interviews with the parents and the two children, and not on the statements or opinions of third parties. They merely recited what the court already knew from its own interviews with the children and from the testimony presented by the parties. The most significant statement in the reports was that the children earnestly desired to remain with their mother, a desire of which appellant was fully aware. The material contained in the reports at issue here was basically cumulative and introduced nothing new of any significance that was, or could have been, relied upon by the court in determining custody. That is why we find, in this particular circumstance, that the error was harmless. *Cf. Daitoku v. Daitoku,* 39 Hawaii 276 (1952) and cases collected in Annot., *supra,* 59 A.L.R.3d 1337, 1349 (§ 4).

*Judgment affirmed; appellant to pay the costs.*