50 A.3d 1098

**Millicent SUMPTER**

v.

**Sean SUMPTER.**

**No. 120, Sept. Term, 2011.**

Court of Appeals of Maryland.

Aug. 21, 2012.

---

er, so there is no reason for us, at this point, to follow the legislative lead.

Stephen J. Cullen (Kelly A. Powers of Miles & Stockbridge, P.C., Baltimore, MD), on brief, for petitioner.

No argument on behalf of respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

Sean Sumpter ("Father") filed in 2010 for an absolute divorce from Millicent Sumpter ("Mother") in the Circuit Court for Baltimore City. In that proceeding, the parties contested physical and legal custody of their two daughters. Prior to the merits hearing, a Circuit Court judge ordered preparation by court-related personnel a custody investigation report (hereinafter referred to sometimes as the "report") to evaluate the custodial abilities of each parent. Apparently, the Circuit Court has in place a local, unwritten policy or "rule" (as Mother's attorney referred to it in briefing and oral argument before us) that limits counsel of record in any child custody proceeding to viewing a single copy of such a report only in person in the Family Division Clerk's Office during normal public business hours. Counsel of record may make only hand-written notes of the contents of the report, yet are forbidden from copying verbatim significant passages.[1]

The report in the present case was completed one week before the merits hearing. Mother's counsel was able only to review, in person and pre-hearing, the report for approximately 90 minutes. As a consequence, Mother's attorney moved, prior to commencement of the merits hearing, to exclude the report or, alternatively, to be provided with a copy of the

---

1. No printed version of this policy or rule appears in the record; if, indeed, such exists.

report. The Circuit Court denied the motion. At the conclusion of the hearing (during which the author of the report testified and the report was received in evidence on motion of Father's counsel), the judge granted a divorce and awarded custody of the children to Father, with visitation to Mother. The Court of Special Appeals, upon Mother's appeal, affirmed, in an unreported opinion, the Circuit Court's judgment.

Mother petitioned successfully this Court for a writ of certiorari. *Sumpter v. Sumpter,* 424 Md. 629, 37 A.3d 317 (2012). Neither Father's nor the children's best-interest attorneys opposed Mother's petition and, moreover, did not file briefs with this Court or appear at oral argument. Mother poses the question, "Did the Court of Special Appeals err in refusing to vacate and remand the case to the [C]ircuit [C]ourt when the parties, their counsel[,] and the best interest attorney were not provided a copy of the custody investigation report[,] in violation of constitutional due process and the Maryland Rules?" [2]

If, as represented by Mother's counsel, the policy or rule is applied uniformly and vigorously to custody proceedings in the Circuit Court for Baltimore City (as it was in this case), we may have reservations about its viability. We are apprehensive, however, to make a conclusive determination on the present case for at least two reasons. First, we are uncomfortable with the state of the record, which does not purport to elucidate the full contours of the policy or rule and how it is applied. Apparently, the policy or rule is unwritten. The only tangible and direct indicia in the record of the existence of the policy or rule (other than some verbal exchanges between the judge and counsel at the hearings) is a letter to

---

2. Mother attempted to argue in her brief to this Court that the Circuit Court local "rule" is prohibited under Maryland Rule 1–102, which limits the scope of permissible circuit court and local rules. She did not, however, present this question in her petition for writ of certiorari. Therefore, we shall not consider directly here this question. Md. Rule 8–131(b)(1); however, we shall add, on our motion, this question to the writ of certiorari issued in this case and, upon return of the case to this Court after remand proceedings, consider it based on Mother's prior briefing.

Mother's counsel, which informed them that the report was completed and may be reviewed at the Family Division Clerk's Office. The scanty record does not reveal when or why the Circuit Court enacted the policy or rule originally. Second, Mother's appeals before this Court and the Court of Special Appeals were unopposed. Neither Father's nor the children's best-interest attorney filed responsive briefs or argued orally at either appellate level. No potentially interested person, e.g., the State Attorney General's Office on behalf of the Circuit Court or the hearing judge, moved to participate as an amicus curiae. Thus, Mother's contentions in this regard were uncontested, and, as such, the appellate "debate" has been one-sided so far.

Therefore, we shall direct remand of the case ultimately to the Circuit Court, without affirmance or reversal, for supplementation of the record as to the full contours of the relevant policy or rule, why it exists (if it does), what (if any) alternatives were considered, any written expression(s) of the relevant rule or policy, and its application generally. Md. Rule 8–604(d)(1).[3] Further, when the case returns to this Court, we invite the Office of the Attorney General of Maryland, in its role as legal counsel to the Circuit Court, to address, as amicus curiae, Mother's arguments in the present case regarding the viability and effect of the asserted policy or rule.

## I. FACTUAL AND PROCEDURAL HISTORY

The following evidentiary facts were adduced at the two-day merits custody/divorce hearing in the Circuit Court, held on

---

**3.** Maryland Rule 8–604(d)(1) provides:

Generally. If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

13–14 December 2010. Mother, Father, and the children were represented each by counsel at the hearing.

Mother and Father were married in Tennessee on 27 November 2001. The marriage yielded two daughters. The parties separated in June 2006. For some time thereafter, apparently by agreement of the parties, the children lived alternately with Mother in Baltimore, Maryland, and with Father in Edgewood, Maryland. In 2007, Mother and the children left Maryland and, after a brief stay in Georgia, settled in Jacksonville, Florida. The children spent the summer of 2007 with Father in Edgewood before returning to Mother in Jacksonville. In March 2008, Mother discovered that one of the daughters was assaulted sexually in Jacksonville by someone with whom Mother had a personal relationship. She sent the children to live with their maternal grandmother in Tennessee. The children returned to Jacksonville in late June/early July 2008.

Another traumatic series of events took place in and around Mother's Jacksonville residence on 20 July 2008. Dari Waters, Mother's first cousin, attacked her in her home. The cousin then left Mother's home and murdered an individual living nearby. Jacksonville police officers responded to the incident and shot fatally the cousin when he resisted arrest.

The children returned to Maryland during the summer of 2009. They lived with Father and his fiancée in Baltimore. At the merits hearing, the parties disputed the intended duration of the children's time with Father in Baltimore in 2009–2010. Mother testified that she permitted the children to live with Father for the 2009–2010 school year only. The hearing judge concluded, however, based on the testimony of non-party witnesses, that the parties agreed to allow the children to live with Father indefinitely.

Father, self-represented at the time, filed a complaint for absolute divorce on 24 March 2010, seeking also sole physical and legal custody of the children. In response, Mother made several attempts, judicially and extra-judicially, to regain control of the children. First, she fabricated a story to dupe

Father into sending the children to Georgia. She told Father that a relative of the children was injured mortally in Georgia, and that the relative wanted to see the children before the relative died. Father was skeptical of Mother's claim and refused to allow the girls to leave. Second, Mother attempted unsuccessfully to remove the children from their Baltimore school, without Father's permission or knowledge. Third, Mother went to the Circuit Court courthouse to obtain an order granting her emergency custody of the children. A daughter from a previous marriage accompanied her. Serendipitously, Father was in the courthouse at the same time, accompanied by his fiancée and mother. The two entourages met and an altercation ensued. Father was charged with assault as a result, but the charge was *nol prossed* subsequently.

Father obtained counsel. His counsel filed an amended complaint for absolute divorce on 24 May 2010. The amended complaint requested temporary custody of the two children and an injunction against Mother from removing them from Maryland. Mother, self-represented at the time, filed an answer that same day, seeking custody of the girls. On 15 June 2010, Mother secured two pro bono publico attorneys. On 12 July 2010, the Circuit Court appointed a best-interest attorney for the children.[4]

The merits hearing was scheduled for 13–14 December 2010. Prior to the hearing, the hearing judge ordered the Adoption and Custody Unit for the Circuit Court ("ACU") to evaluate the custodial abilities of the parents and to prepare a written custody investigation report. The judge directed that the report be completed by 1 November 2010. The ACU, however, did not complete the report until 3 December 2010.

---

4. The hearing judge's order described the role of the "best-interest attorney" as "a court-appointed lawyer who provides independent legal services for the purposes of protecting a child's best interest, without being bound by the child's directive or objectives." The hearing judge's order provided also that the best-interest attorney would serve as the children's "privilege attorney." *See Nagle v. Hooks*, 296 Md. 123, 460 A.2d 49 (1983).

On that date, the ACU mailed to Mother's counsel (and presumably to counsel for Father and the children) a letter stating that the report could be reviewed by visiting the Family Division Clerk's Office in the courthouse. The letter did not elaborate further about the asserted Circuit Court policy or rule regarding access to custody investigation reports generally. Moreover, presumably, as the order directing preparation of the report provided, the hearing judge was sent a copy of the report.

The report totals 164 pages and contains sensitive, personal information about the children, the parties, and the parties' families. The report is divided into two parts, findings and appendices. The findings are spread over 17 pages, but do not reach a conclusory recommendation regarding custody of the children. Rather, the findings summarize ACU-staff interviews with the children, the parties, and the parties' families, as well as recitation of their personal, criminal, health, education, housing, child protective services, and employment histories. The 17 appendices comprise the remaining 147 pages and contain supporting documentation for the findings. The appendices include Maryland Department of Public Safety and Correctional Services records for Mother, Father, and Father's fiancée; school records for the children; mental health records for the children and Mother; peace orders awarded to Father's mother and Father's fiancée against Mother; peace orders award to Mother against Father and Father's fiancée; a guilty plea by Mother in a matter in the Superior Court of Liberty County, Georgia; a Jacksonville police report about the death of Mother's cousin; and, an order of the Circuit Court for Baltimore City removing a child of Mother from another marriage from the "Child in Need of Assistance" ("CINA") program and placing her in Mother's care.

On 6 December 2010, Mother's counsel received the letter notice from the ACU that the custody investigation report was available for viewing. That same day, both of her counsel visited the Family Division Clerk's Office at 2:30 p.m. It is represented to us by Mother that the Circuit Court has an

unwritten policy or "rule" that limits parties' attorneys' access to custody investigation reports. The rule prohibits counsel from viewing the report outside of the Family Division Clerk's Office and prohibits copying the report in any manner. Handwritten notes made from viewing the report are permitted, so long as verbatim transcription of significant passages are not made.[5] How the latter provision is enforced goes unexplained. Mother's counsel studied and took notes from the report for 90 minutes, until the Family Division Clerk's Office closed to the public for the day and counsel was obliged to leave. Due to their self-described "incredibly full" schedules, Mother's two attorneys did not see the custody investigation report again until the merits hearing.

On 13 December 2010, the first day of the divorce and custody hearing, one of Mother's counsel moved in limine to exclude from evidence the custody investigation report or, in the alternative, that the hearing judge provide the parties' attorneys with copies of it. Mother's counsel argued that the application of the Circuit Court policy or "rule" prejudiced his client's case for two primary reasons. First, the policy or rule prevented Mother's counsel from consulting with independent experts in preparation for the merits hearing. Second, the limited time to review and access the custody investigation report prevented Mother's counsel from reviewing the "voluminous" report sufficiently to prepare for the hearing. Specifically, the "rule" limited their ability to prepare Mother to testify and to prepare cross-examination of the author of the report, especially because the report was completed and made "available" only one week before the hearing. Prior to ruling on the motion, the hearing judge asked if Mother's counsel requested a continuance for additional time to review the

---

5. Mother's counsel represented at oral argument before this Court that the actual parties are prohibited from reviewing the custody investigation report for their case; only their attorneys may read it. If a party in a custody dispute is self-represented, the party may review only those portions of the custody investigation report pertaining to that party. Again, how the latter is policed goes unexplained on this record.

report. Mother's lead counsel stated, "I don't need a continuance, Your Honor. I need an actual copy of the report."

The hearing judge denied the motion. He explained that the Circuit Court imposes "practical restrictions" on the access to custody investigation reports because of the sensitive information contained in them. He stated further that the burden is on counsel to create time in their hectic schedules to review the report sufficiently, at the Clerk's office, in order to prepare for the hearing. The judge reviewed also the content of the 17 appendices to the report. He observed that most of the documents in the appendices appeared to him to be easy to comprehend and otherwise already in possession of the parties or obtainable elsewhere by them. With regard to being unable to prepare and conduct a thorough examination of the report's author, the hearing judge observed that, "while there is a prohibition on copying the report, there is no prohibition on having the report and using it in the course of the proceedings in the courtroom." The judge granted the parties' attorneys access to the custody investigation report during the hearing for purposes of examining witnesses. The hearing judge, however, would not permit the attorneys to study the report over the lunch break.

The decision to limit the attorneys' access to the custody investigation report during the hearing proved, at times, a hindrance to the flow of the proceeding. The scene is reminiscent of the Greek mythological story of three Cyclopes with one eye between them that had to be passed around as needed or desired. Just before Father's attorney commenced her examination of the report's author, the following exchange occurred between the parties' attorneys and the judge:

**MOTHER'S ATTORNEY:** Your Honor, may I have the custody report to use—

**THE COURT:** Yes.

**MOTHER'S ATTORNEY:**—to prepare for my cross-examination?

**FATHER'S ATTORNEY:** Your Honor, actually, I was about to ask the same thing—

**THE COURT:** Well, you're going to have to share it, then.

**FATHER'S ATTORNEY:**—for purposes of examination.

**THE COURT:** Let's have [Father's Attorney] have it now, since it's her examination. [Mother's Attorney], if you need a few minute break before you cross, I'll allow you that.

Additionally, Father's attorney requested the court's indulgence on three occasions while she located specific content in the report, explaining, "It's just that I'm not that familiar with the report." Prior to Mother's cross-examination of the report's author, the hearing judge offered Mother's counsel a brief recess to review the report. Lead counsel declined, stating that his co-counsel would follow along in the report during his examination.

At the end of the testimony of the report's author, Father's attorney moved to have the child custody report entered in evidence. Mother's lead counsel renewed his objection based on not having been given a copy of the report, reiterating the reasons articulated in his pre-hearing objection. He urged further that the report was cumulative, in light of the author's live testimony, thus diminishing the need to submit a document containing "double, triple, and quadruple hearsay." The hearing judge overruled Mother's objection and allowed the report into evidence.

At the conclusion of the hearing, the judge granted a divorce and sole legal and physical custody of the children to Father. The judge observed that Father's testimony was credible and that he provided a stable environment for the children. He observed further that Mother had an "impaired" character; admittedly lied to the court; failed to respond sufficiently to the sexual assault of her child; and attempted to remove surreptitiously the children from Maryland. He required that Mother be consulted by Father about "major decisions involving the children" and that she have access to the children's health and school records. The hearing judge awarded Mother a specific visitation schedule, attuned to holidays and the academic school year.

Mother noted timely an appeal to the Court of Special Appeals. Neither Father's nor the children's best-interest attorneys appealed or cross-appealed, nor filed a responsive brief with that court. Mother argued that the Circuit Court policy or "rule" denying her counsel a copy of the report violated her due process rights.[6] A unanimous panel of the Court of Special Appeals, in an unreported opinion, affirmed the Circuit Court. The panel concluded that there was no violation of Mother's due process rights for two primary reasons. First, although having weeks to review the custody investigation report while preparing her appeal, Mother did not argue that any of the report's findings were untrue, misleading, or rebuttable. The panel concluded also that apparently Mother's counsel was knowledgeable sufficiently about the report at the time of the merits hearing in the Circuit Court because he did not move for a continuance and declined a recess to review the report prior to his cross–examination of the report's author. The panel's unreported opinion, however, indicated that its decision was a close call, noting that the Circuit Court's apparent access policy regarding custody investigation reports "could, under certain circumstances, be unfair to a litigant."

## II. DISCUSSION

### A.

Mother continues to argue primarily that the Circuit Court policy or "rule" violated her due process rights. Specifically, her counsel's limited access to the custody investigation report denied her the right "to be aware of all of the evidence considered by the trier of fact in making an adjudicatory determination and to have the opportunity to challenge and

---

**6.** Mother argued also that the awarded visitation schedule, which required Mother to pay for some of the children's travel between the parents, was an abuse of discretion because she could not afford to pay for the children's travel. The Court of Special Appeals disagreed and affirmed the hearing court on this issue. Mother did not raise this issue in this Court.

answer that evidence." *Denningham v. Denningham*, 49 Md.App. 328, 337, 431 A.2d 755, 760 (1981) (concluding that a judge violated appellant-father's due process rights by denying parties access to the custody investigation report that was admitted later into evidence). Although recognizing that, unlike in *Denningham*, her counsel had *some* access to the relevant custody investigation report, Mother maintains that the Circuit Court policy or rule is so restrictive that she was denied effectively the opportunity to review, challenge, and respond to the report in a meaningful manner.

Mother recapitulates the assertedly prejudicial limitations of the policy or rule that she identified at the custody hearing. First, the limited access to the custody investigation report prevented her counsel from reviewing sufficiently the "voluminous" report and appendices. As a result, Mother's counsel could not prepare Mother for her hearing testimony, could not challenge fully the evidence by interviewing witnesses whose statements were incorporated in the report, and could not prepare an exacting cross-examination of the report's author. Further, without a copy of the report, Mother's counsel could not refer to the report during opposing counsel's examination (recalling that the hearing judge permitted only the examining attorney to possess the sole copy of the report during direct examination). Second, the rule prevented Mother's counsel from consulting pre-hearing with possible independent experts. The Circuit Court policy or rule limits attorneys to taking handwritten notes, which, she argues, lack the detail and context necessary for an expert to appreciate what he or she is expected to analyze and perhaps respond critically. *See* American Psychological Association, *Speciality Guidelines for Forensic Psychology*, http://www.apa.org/practice/guidelines/forensic-psychology.aspx (last visited 10 July 2012) (highlighting rules 1.02 and 2.01, which require forensic psychologists to "weigh all data, opinions, and rival hypothesis impartially" and to base their competency on the "preparation and study they are able to devote to the matter"). Mother argues also that the seven day notice of the report's completion and availability exacerbated the adverse effects of application of the Circuit

Court policy or rule in this particular case. Mother's counsel were limited in their ability to collaborate with her because she lived in Georgia at the time just prior to the hearing.

The Circuit Court and the Court of Special Appeals endeavored to explain why Mother was not prejudiced by application of the policy or rule. The Circuit Court opined that the custody investigation report was comprehensible, without the need for intensive study. The Court of Special Appeals agreed, noting that Mother's counsel declined a continuance to review further the report, indicating, to it at least, that counsel was prepared sufficiently.[7] The intermediate appellate court added that Mother did not contend on appeal before it that any portion of the report was untrue, misleading, or rebuttable. The Circuit Court justified the policy or rule also by noting that its existence protects sensitive material about the parties and their children from being re-published more generally.[8] The Circuit Court believed that an attorney's professional obligation to keep confidential custody investigation reports is not sufficient unto itself to safeguard the privacy of the parties and implicated individuals.

## B.

One hurdle to issuing a ruling in this case is the dearth of justification in the record for the Circuit Court policy or rule. This absence is significant when the greater context of the law and rules is considered. The report is a "case record," defined as "a document, information, or other thing that is collected,

---

7. At oral argument before us, Mother's attorney countered this contention, explaining that he declined a continuance because it would not cure the already-worked prejudice. With a continuance, but without a copy of the report, he argued that he still could not consult with a competent expert, who would require a copy of the report to review before he or she could decide whether and to what extent he or she could testify.

8. Although perhaps true to some extent while the matter was pending in the Circuit Court, anomalously, this seems less true after an appeal is taken. We, the intermediate appellate court, the parties (and their counsel), and the public appear to have had full access to the unsealed report as contained in the record transmitted on appeal.

▮▮▮▮▮▮▮▮▮▮

received, or maintained by a court in connection with one or more specific judicial actions or proceedings." Md. Rule 16–1001(c)(1)(A), (e)(3). When sealing or limiting access to a case record, a trial judge must make findings about the interest sought to be protected from inspection, supported by specific findings. Md. Rule 16–1009(d)(2); *see also Balt. Sun Co. v. Colbert*, 323 Md. 290, 305, 593 A.2d 224, 231 (1991) (citing *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir.1984) ("A court ruling on a motion to seal judicial records should articulate the interest sought to be protected by the seal, supported by specific findings.")). When determining whether to preclude or limit inspection of a case record, as was the case here, the trial judge must consider "whether a special and compelling reason exists" to justify restricted access. Md. Rule 16–1009(d)(4)(A). The trial court's final order that precludes or limits inspection of a case record "shall be as narrow as practicable in scope and duration to effectuate the interest sought to be protected by the order." Md. Rule 16–1009(d)(3); *see also Colbert*, 323 Md. at 306, 593 A.2d at 231. Moreover, the trial court must state why alternatives to sealing or limiting access to the case record were rejected. *Balt. Sun v. Thanos*, 92 Md.App. 227, 246, 607 A.2d 565, 574 (1992) (discussing requirements for sealing a pre-sentencing report in a first-degree murder case).[9]

▮▮▮ The limited record before us does not illuminate sufficiently the full contours of the Circuit Court policy or rule, its origin, the balancing of the interests sought to be protected by

---

9. Both *Baltimore Sun Company v. Colbert* and *Baltimore Sun v. Thanos* were issued prior to this Court's adoption of the Maryland Access to Court Records Rules in 2004. The Maryland Access to Court Records Rules are in sections 16–1001 through –1011 of the Maryland Rules. Despite the timing of these cases, we believe they are consistent with the intent and purpose of the Maryland Access to Court Records Rules. The Maryland Ad Hoc Committee on Electronic Access to Court Records (whose recommendations lead to the formation of the Committee on Access to Court Records) relied on *Thanos* and *Colbert* in its report about the legal considerations of publicizing court records. Report to the Maryland Ad Hoc Committee on Electronic Access to Court Records, *Constitutional and Common Law Rights of Access to Court Records* 6–12 (25 June 2001).

it against competing interests, whether less restrictive alternatives were considered and why they were rejected, and any special or compelling reasons to prohibit the parties' attorneys from receiving a copy of the custody investigation report. Effective review of the Circuit Court policy or rule is not possible given the paucity of the present record. *Thanos,* 92 Md.App. at 246, 607 A.2d at 574. Therefore, remand to the Circuit Court for supplementation of the record is appropriate. *Colbert,* 323 Md. at 307, 593 A.2d at 232; *Thanos,* 92 Md.App. at 246, 607 A.2d at 574.

## C.

We observe, without concluding, that the custody investigation report may have been "sealed" effectively or limited by the Circuit Court policy or rule or otherwise subject to nondisclosure under the Maryland Access to Court Records Rules. The Maryland Access to Court Records Rules state that, generally, court records are presumed open to inspection by the public. Md. Rule 16–1002(a). The context of a custody investigation report, however, may trigger exceptions to the presumption of openness. For instance, the report may be unaccessible to the public because the hearing judge, through invocation of the Circuit Court policy or rule, "sealed" it, Md. Rules 16–1005(a)(5) & 16–1006(k), because the report may have touched upon alleged child abuse or neglect and therefore is required by statute to be kept confidential, Md. Rule 16–1006(d), or because the report contains a psychological report about the parties and their children, Md. Rule 16–1006(i)(1)(A), (B).

 The above assumption notwithstanding, Mother's counsel may have been entitled to "access" the custody investigation report.[10] After the initial adoption of the Maryland

---

**10.** Although Mother argued primarily that the Circuit Court policy or rule in the present case violated her due process rights, we must " 'exercise the utmost care' " whenever asked to extend due process protection to a liberty interest because doing so overemphasizes " 'the policy preferences of the members of this Court' " and, as a result,

Access to Court Records Rules, this Court amended Maryland Rule 16–1002(f) in 2006 to state, "The [Maryland Access to Court Records] Rules do not limit access to . . . *a case record by a party or counsel of record in the action.*" (Emphasis indicates 2006 amendment.) In the 156th report of the Standing Committee on Rules of Practice and Procedure, the Rules Committee commented that "[t]he proposed amendment to Rule 16–1002 makes clear that access to a case record by a party to the proceeding or counsel of record is not limited by the Rules in Title 16, Chapter 1000." Moreover, in the related context of CINA cases,[11] counsel of record is permitted to "review" confidential and sensitive evidence about juveniles and their parents contained in the court record. *See* Maryland Code (1973, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 3–827(a)(2)(iii) (allowing a party's attorney to "review" a confidential court record in a CINA proceeding).

What constitutes an acceptable opportunity to "access" or "review" such a record is not conceptualized so easily. The

___

removes the issue from the "'arena of public debate.'" *Conaway v. Deane,* 401 Md. 219, 315, 932 A.2d 571, 629 (2007) (quoting *Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772, 787 (1997)). In any event, we will not reach a constitutional argument when an issue may be decided on a non-constitutional basis. *Prof'l Staff Nurses Ass'n v. Dimensions Health Corp.,* 346 Md. 132, 138–39, 695 A.2d 158, 161 (1997) (quoting *State v. Lancaster,* 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993)). Constitutional avoidance may be appropriate in this case, and certainly constitutional hesitation is at this juncture.

11. A "Child in Need of Assistance" ("CINA") proceeding contemplates many sensitive issues—such as sexual, physical, or mental abuse; developmental disabilities; mental disorders; and neglect—and involves a child's parents, relatives, and custodians. *See generally* Maryland Code (1973, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 3–801. Similar sensitive issues arise in a child custody proceeding. *See, e.g., Volodarsky v. Tarachanskaya,* 397 Md. 291, 916 A.2d 991 (2007) (discussing, in a child custody case, alleged sexual abuse by the father); *Malin v. Mininberg,* 153 Md.App. 358, 837 A.2d 178 (2003) (discussing, in a child custody case, the substance abuse problem of father and developmental disability of his child). Thus, the need for confidentiality in CINA cases is at least comparable to the need for confidentiality in private child custody proceedings.

practice of several other circuit courts around the State [12] concerning pre-hearing access to custody investigation reports indicates that "reviewing" such reports includes allowing counsel of record to obtain a pre-hearing copy of a custody investigation report or a pre-hearing transcription of the author's oral report. In Prince George's County, for example, it appears that copies of the custody investigation report are made available to the parties' counsel and the assigned judge. Jeanne F. Allegra, *Elements of a Custody Evaluation, in Maryland State Bar Association Family Law News* 13 (Feb. 2009), *available at* http://www.msba.org/sec_comm /sections/ family/newsletter/FamLawFebruary09.pdf. In Montgomery County, a "court evaluator" presents his or her custody investigation report orally, on the record, at a pre-hearing settlement conference. Court Evaluators, *Montgomery County Circuit Court*, http://www.montgomerycountymd.gov/cibtmpl. asp?url=/Content/CircuitCourt/Court/FamilyDivision/Court_ Evaluators/CourtEvaluators.asp (last visited 10 July 2012). A transcript of the evaluator's oral report may be ordered by a party's attorney. The Montgomery County Circuit Court may provide, in some cases, a copy of the child custody report to the parties, their counsel, and the assigned judge. In Harford County, a child custody evaluator provides, at a pre-hearing settlement conference, a verbal custody investigation report, which is rendered on the record. *Child Custody/Visitation Evaluations, Family Services Program, Circuit Court for Harford County*, http://mdcourts.gov/family/harford. html#custodyevaluations (last visited 10 July 2012). Again, a transcript of the verbal report may be ordered by a party's attorney.

Our limited survey of other State circuit court practices concerning pre-merits-hearing access to custody investigation reports suggests that the apparent policy or rule of the Circuit Court for Baltimore City, at least as portrayed to date in the

---

12. For our judicial notice comparison purposes, only the websites of the Circuit Courts for Harford and Montgomery Counties provide substantial information about their treatment of access to custody investigation reports by parties' counsel or parties directly.

present case, may be much more restrictive than the policies of other circuit courts. Thus, it may be out of the mainstream, for reasons that presently are not apparent entirely. Although not the end-all and be-all of the present bone of contention, we note this seeming outlier status nonetheless. Assuming, for the sake of argument, that we are asked here to address the equivalent of a local rule and that the rule is applied consistently and strictly in that jurisdiction, such a local rule cannot be "inconsistent with or ... superseded by the general rules of practice and procedure." *Bastian v. Watkins,* 230 Md. 325, 330, 187 A.2d 304, 307 (1963) (discussing a Circuit Court rule regulating who may file pleadings in that court). We are reticent, however, on the state of this record to go "all in"[13] and announce that the Circuit Court's apparent policy or rule is impermissibly outside the mainstream and, if so, without adequate cause.

The alternative approaches of the other circuit courts described above, however, seem reasonable and appear to be "as narrow as practicable in scope and duration" to protect the privacy of persons discussed in a custody investigation report, but still allowing a full pre-hearing discovery of relevant evidence. Md. Rule 16–1009(d)(3). These practices enable the parties' attorneys "to be aware of all of the evidence considered by the trier of fact in making an adjudicatory determination and to have the opportunity to challenge and answer that evidence." *Denningham,* 49 Md.App. at 335, 431 A.2d at 759.[14]

---

**13.** To go "all in" is a term of art in the game of poker where, in one iteration, a player bets all of his or her chips at any point during a betting round to ensure that he or she will be able to remain in competition at the final call, although the amount of money he or she may win from the other players is limited to the stack bet when going "all in."

**14.** The *Denningham* court concluded ultimately that denying the parties access to the custody investigation report was harmless error. *Denningham v. Denningham,* 49 Md.App. 328, 337, 431 A.2d 755, 760 (1981). Nonetheless, the analysis in the opinion bears on the present case.

■ The Circuit Court policy or rule here, by comparison, appears to impede significantly that ability. Counsel for the parties, it seems, could access the report pre-hearing only in the Clerk's office during its public hours, could not make verbatim notes of extensive passages from the report, and could not make or receive copies of the report (or any portion thereof). These limitations curtailed Mother's counsel's ability (and presumably Father's and the children's best-interest counsel as well) to prepare for the merits hearing, review critically the probable evidence contained in the report, or obtain independent expert opinions. For example, the merits hearing transcript suggests that the parties' attorneys were not prepared fully to cross-examine the report's author. At one point, both attorneys requested simultaneously possession of the single available copy of the report. Additionally, counsel received notice that the custody investigation report was completed approximately one week before the hearing. With such a short turnaround, providing the parties' attorneys with a copy or transcript of the custody investigation report could have provided them with a greater opportunity to incorporate the report into their respective preparation. Further, it may be unfair that parties who must pursue their child custody claims in Baltimore City [15] have diminished access to child custody reports, relative to parties similarly situated in other circuit courts throughout Maryland.

While the seeming practice of Montgomery, Prince George's, and Harford counties fosters greater pre-hearing access by the parties' attorneys to custody investigation reports, they seem also to safeguard the privacy of the people discussed in those reports. An attorney's unique role as an "officer of the court" diminishes ordinarily, to an acceptable level of risk, the concern that sensitive information in the

---

15. A hearing court's jurisdiction to resolve a child custody dispute depends on the domicile of the child. *Schwartz v. Schwartz*, 26 Md. App. 427, 428, 338 A.2d 386, 387 (1975) (citing *Renwick v. Renwick*, 24 Md.App. 277, 284, 330 A.2d 488, 492 (1975)). The domicile of the child is the domicile of the parent with legal custody. *Id.* (citing *Taylor v. Taylor*, 246 Md. 616, 618–19, 229 A.2d 131, 132–33 (1967)).

report will be disseminated more broadly. Maryland attorneys have an enforceable duty to treat sensitive records with care. *See* Maryland Lawyers' Rules of Professional Conduct (MLRPC) 1.6(a) ("A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation," or permitted by the MLRPC). Further, attorneys are obliged to follow the lawful and considered instructions of the court. *Falik v. Hornage,* 413 Md. 163, 189–90, 991 A.2d 1234, 1250 (2010) (citing MLRPC 3.4(c)); [16] *see also* Md. Rules 15–201 to –208 (empowering the presiding judge to issue sanctions for contempt). Obviously, other circuit courts have confidence that their trial judges can implement confidentiality safeguards that balance sufficiently the privacy concerns of persons mentioned in a custody investigation report with the parties' and/or their counsels' need to discover and prepare to address the report's contents. *See Falik,* 413 Md. at 189–90, 991 A.2d at 1250 (stating that the implementation of confidentiality restrictions should be left to the sound discretion of trial judges).

Although we are wary of the apparent policy or "rule" of the Circuit Court for Baltimore City described to us so far, we are even more wary of issuing a definitive holding, as sought by Mother, on the limited, uncontested appellate record in this case. Therefore, we shall reserve a final ruling until after the case is remanded for supplementation of the record about the Circuit Court policy or rule and, upon return to this Court, the Attorney General's response to our invitation to defend the policy or rule.

**JUDGMENT NEITHER AFFIRMED NOR REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR**

---

**16.** Maryland Lawyers' Rule of Professional Conduct 3.4(c) provides, "A lawyer shall not: knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists...."

FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO ABIDE THE RESULT.

BELL, C.J., and ADKINS, J., dissent.

ADKINS, J., dissenting, in which BELL, C.J., joins.

I respectfully dissent from the majority opinion.

There is no question that in this case, the Circuit Court applied a rule limiting access to the custody investigative report, which prohibited counsel from viewing it outside the courthouse or possessing a copy of the report for counsel's use. The record contains a letter from the ACU to counsel, 10 days before trial, stating that the report could be reviewed by visiting the Family Division Clerk's Office in the courthouse. At trial, the judge explained that the Circuit Court imposes "practical restrictions" on the access to custody investigation reports because of the sensitive information contained in them. The judge would not permit the attorneys to study the report over the lunch break. During trial, both attorneys requested use of the report at the same time, but the judge did not permit copying to facilitate that, and directed which counsel could use the report first. Thus, there is no need to remand to the Circuit Court to determine whether or how this restricted access policy was applied *in this case.*

To be sure, the majority's goal to understand the full terms of the Circuit Court's policy, the rationale for adoption, and alternatives considered by the Court, is a laudable one. Perhaps we do not have full appreciation of the Circuit Court's thinking or the experiences with abuses by the parties or attorneys when given such reports. But the majority has not been clear about *how* the parties should accomplish the proposed "supplementation of the record as to the full contours of the relevant policy or rule, why it exists (if it does), what (if any) alternatives were considered, any written expression(s) of the relevant rule or policy, and its application generally." Maj. Op. at 672, 50 A.3d at 1100–01. Certainly neither party can subpoena the judges who formulated and adopted the rule

to testify as to the "full contours" sought by the majority. Moreover, unlike this Court, which has rule-making power and established procedures governing the adoption of rules, including a public hearing, and public records of the hearing as well as the recommendations made to the Court by its Rules Committee, no such power exists in the Circuit Court.

If the majority intends that the Circuit Court should provide some statement and explanation of the rule, either by oral opinion or by providing written documentation of the rule, then the opinion should say so. Absent a directive to that effect, the majority opinion leaves the parties, especially Petitioner, dangling.[1] The opinion does not say what occurs if Petitioner is unable to discover and add to the record, the "full contours" of the rule, including the rationale for adoption and alternatives that were considered. Absent full supplementation of the record as called for, there is no clear pathway for the Petitioner to return to this Court for a decision on whether the rule survives the legal challenges posed by Petitioner.

If we do not decide the case on the present record, as I think we can, the opinion should direct that we are seeking clarification and explication of the rule or policy *by the Circuit Court,* and that if the Circuit Court does not provide same, we will decide the issue on the record we have. We certainly have the authority to issue such order. Moreover, often we are faced with a case having a less than desirable record. Normally, we proceed to decide it, allocating the burden of having failed to provide the record to the appropriate party and utilizing presumptions based on that burden. Here, if the record is incomplete regarding the nature of and rationale underlying the policy, it is the Circuit Court's failure, not that of the parties. The procedure adopted by the majority is not only highly unusual, but, in light of the clear application of the

---

1. Respondent did not appear in this Court, and may have no interest in appearing in Circuit Court on remand.

restriction with respect to this highly relevant report, is decidedly unfair.

Chief Judge BELL authorizes me to state that he joins the views expressed here.